Baldwin, J.
Our law giving damages on the dissolution of injunctions has been uniformly the same, from the first enactment on the subject down to the present time.
The act of the 20th of January 1804, provides that “ Where any injunction shall be hereafter obtained, to stay the proceedings on any judgment rendered in any of the Courts of this Commonwealth, for money or to *195 bacco, and such injunction shall be dissolved wholly or in part, damages at the rate of ten per centum per annum from the time the injunction was awarded, until the dissolution, shall be paid to the party on whose behalf such judgment was obtained, on such sum as appears to be due, including the costs; and where any such injunction shall be depending in the District Courts of Chancery, the clerk of such Court shall, on dissolution thereof, certify to the clerk of the Court wherein the judgment was obtained, the order of dissolution, as also the time of granting and dissolving such injunction, and the clerk shall issue the execution according to the provisions of this act; and in all cases, where a forthcoming bond has been executed by the complainant in such injunction, and no judgment rendered thereupon, the Court in which execution is awarded, shall direct the said damages to be included in the judgment, which shall be in satisfaction of all interest and damages during the time aforesaid: Provided nevertheless, That where the injunction is granted in order to obtain a discovery, or any part of the judgment shall remain enjoined, the Court, wherein the injunction shall be depending, may, if it appear to them just, direct that no such damages shall be paid by the complainant, or such proportion as according to equity they deem expedient; and the clerk of the Court where the judgment was rendered, or the Court by whom execution shall be awarded, shall govern themselves accordingly.”
This enactment we find repeated verbatim in the revisal of 1819; 1 Rev. Code, p. 209, § 61; and in the act of April 1831, establishing the Circuit Superior Courts, Sup. Rev. Code, p. 152, <§> 43, it was so re-enacted, with an alteration merely as to the style of the Court.
The purpose of this law is to give damages at 10 per cent, during the time that the plaintiff at law is restrained from enforcing his judgment by process of ex *196 ecution ; and it embraces judgments which give no interest at all, as well as those which do give running interest; in the latter case, increasing the rate from six to 7 ° ten per centum. Accordingly we find, that by the very terras actj ^ damages are given “from the time the injunction was awarded until the dissolutionto which I can attach no other meaning than the period during which the hands of the plaintiff at law are tied, so as to prevent him from suing out execution. It contemplates an effectual, not a merely formal dissolution ; and has reference not to a mere order of Court for dissolution, but to the actual dissolution itself. It matters not, therefore, whether the fact of dissolution be accomplished by the authority of the Court which granted the injunction, or by that of some other competent tribunal: the occurrence of the fact fixes the date to which the damages are to be calculated.
This, it seems to me, is the plain meaning of the statute ; and no obscurity can be thrown over the question but by confounding the order for dissolving the injunction with its actual dissolution. A dissolution order may be suspended or set aside by the same Court which made it, and afterwards renewed in the further progress of the cause, or at the final hearing; but surely, during its suspension, or while set aside, there is no dissolution, and in the nature of things cannot be, for the injunction is in full force, and the plaintiff at law restrained from taking out his execution. And so, an appeal from a dissolution order suspends its effect and continues the injunction until the hearing in the Appellate Court; and a reversal in that Court, on the one hand, then confirms the injunction, and an affirmance, on the other, then dissolves the injunction.
It is true that the affirmance by an Appellate Court of any decree or judgment, gives it effect from the lime it was rendered ; but it is moreover true that the affirmance gives effect also to the decree or judgment during *197 the pendency of the appeal. Thus if a judgment be rendered for money, an appeal taken therefrom, and the judgment affirmed, the real estate aliened by the debtor between the date of the original judgment and the date of the judgment of affirmance, whether owned by him at the date of the original judgment, or acquired after-wards, is subject to the lien. M’ Clung v. Beirne, 10 Leigh 394. And so where a dissolution decree or order is appealed from and affirmed, the affirmance gives the effect which the law in such a case attaches to the judgment enjoined, of 10 per cent, damages from the granting of the injunction until its dissolution; and these damages do not stop at the date of the original decree or order of dissolution, but continue to run during its suspension by the appeal, until the ultimate dissolution by the affirmance in the Appellate Court.
If this were not so, then the enactment of the statute would fall far short of the principle upon which it is founded, to wit, compensation to the plaintiff at law, who has recovered a judgment, and is notwithstanding delayed and harassed in the collection of his money by a vexatious bill of injunction : and the evil is aggravated by the protraction of the litigation in an Appellate Court, whereby the original restraining order is in effect continued, revived or reinstated. The construction of the law contended for by the defendant in error does not comport with either its letter or its spirit; and if sanctioned would make the damages awarded depend, in a great measure, not upqn the ultimate decision of the controversy, but upon the fact whether it was correctly or erroneously decided by the Court of original jurisdiction. For if that Court should correctly decide to dissolve the' injunction, then according to that construction the affirmance in the Appellate Court would entitle the plaintiff at law only to damages until the date of the original dissolution order or decree; whereas if the Court below should erroneously continue or perpetuate *198 the injunction, then the Appellate Court, upon reversing that decision, and proceeding to make such order or decree as the Court below ought to have made, would dissolve the injunction, and if the cause were ready for gna¡ hearing, dismiss the bill. And in the latter case no one can doubt that the damages would run until the dissolution of the injunction by the Appellate Court. Thus the correct ultimate decision of the controversy in favour of the same party, would in the two categories be attended with different results.
The case of Wood v. Dwight, 7 John. Ch. R. 295, cited for the appellee, was simply this: An injunction had been granted to stay execution at law, which was afterwards dissolved, and the plaintiff in equity filed an arbitrary appeal from the order of dissolution ; and the question was whether the plaintiff at law was at liberty to proceed with his execution, notwithstanding the appeal. The Chancellor, after intimating that an appeal would not lie from such an interlocutory order, which however he did not decide, (that being the province of the Court of Errors,) held that the appeal did not affect the validity of the dissolution order, nor revive the injunction and give it force and effect; that an appeal only stays future proceedings in Court, but the dissolution order was perfect and finished eo instanti that it was entered, and discharged the injunction, which was rendered functus officio, and will not be revived by the mere act of the party. He therefore determined that the appeal did not prevent the plaintiff at law from proceeding to enforce his judgment by execution.
This New York decision has no application to our jurisprudence, it being directly in the teeth of our own statute law, practice and adjudications. For error of a Circuit Court in dissolving an injunction, the Court of Appeals, or any Judge thereof, may, by our injunction law, allow an appeal from the order of dissolution; 1 Rev. Code, p. 205, § 44; Supp. Rev. Code, p. 152, *199 <§> 44; which appeal would be utterly idle, if it did not have the effect of suspending the order of dissolution, and thereby continuing or reviving the injunction. As a necessary consequence, and for no other reason, the plaintiff at law cannot sue out execution pending the appeal; and so it was held by this Court, and upon that ground only, in Turner v. Scott, &c. 5 Rand. 332. The principle of this decision was afterwards recognized by the Court in Epes’s adm'rs v. Dudley, 4 Leigh 145; in which it was held that upon the affirmance in the Court of Appeals of a dissolution order, there was no longer any injunction, and the plaintiff at law was then at liberty to sue out his execution, without waiting till the decree of affirmance should be entered up in the Chancery Court. The reasoning of the Judges very properly treats the dissolution of the injunction as derived from the order of dissolution in the Court below, but as rendered effectual by the decree of affirmance in the Appellate Court. Of course there was no actual dissolution until the date of the latter.
And it is because the actual dissolution is derived from the dissolution order of the Chancery Court, that the damages for delaying the execution, as well during the pendency of the injunction in the Appellate Court, as during its pendency in the Chancery Court, depend upon the law of injunctions, and not upon the law of appeals. The law of appellate damages has no application to such a case. It applies only where the appeal is from a decree or judgment by which a direct recovery is had, as where a decree or judgment awards the payment of money, and an appeal is taken therefrom. But it is not applicable where the appeal is from a decree or order collateral to the recovery, as where the decree or order dissolves an injunction to a judgment at law. The condition of the appeal bond, it is true, is the same in both cases, to wit, to pay the amount recovered in the Court below, and all costs and damages in the Court *200 above; but in the latter case there are no appellate damages, the law giving them only upon the amount recovered, and nothing is recovered by the decree or order unless it be costs; the only effect of a dissolution beblo to let i°°se a judgment at law. Such is the plain result of our statutory provisions. 1 Rev. Code, p. 208, § 59; p. 240, § 61; p. 204, § 50, 51; p. 239, § 59; Fox & Vowles v. Mountjoy, 6 Munf. 36; Eppes v. Thurman, 4 Rand. 384; M’Kay v. Hite’s ex’ors, Id. 564.
If therefore the plaintiff at law is not entitled to injunction damages while the injunction is pending in the Court of Appeals, but only until the ineffectual order of dissolution in the Chancery Court, then he is without redress ; though there can be no reason for allowing damages for delay of execution occasioned by an appeal from a decree that gives a recovery, and withholding them where such delay is occasioned by an appeal from a decree that removes a restraint improperly imposed upon a pre-existing recovery. Indeed the want of redress under the law of appeals is a sufficient reason for believing that the spirit of the law of injunctions corresponds with its letter, in looking to an effectual instead of a nominal dissolution of the injunction.
I do not perceive that the case cited for the defendant in error, of Woodson v. Johns, 3 Munf. 230, throws any light upon this question. That was an action after dissolution of an injunction, and affirmance of the decree of dissolution upon the injunction bond dated in 1791, and conditioned, the reporter says, for the prosecution of an injunction in the High Court of Chancery, to stay proceedings on a judgment at law ; but the terms of the condition are not stated. At that time, though the law required injunction bonds to be given, 12 Hen. St. p. 467, there was no statute prescribing what should be the condition, nor giving damages upon the dissolution of the injunction. The condition was *201 first prescribed by the act of 1794, 1 Rev. Code, p. 218, <§> 114; Old Rev. Code, p. 95, and the damages were first given by the act of the 20th of January 1804. 1 Rev. Code, p. 209, ■§> 61; 2 Old Rev. Code, p. 29. Of course in the case cited there could be no injunction damages; and the Court, without adverting to the circumstance that (for the reason already suggested) there could not in such a case be appellate damages, resolved amongst other points, that in an action upon an injunction bond appellate costs and damages could not be recovered. The obvious reason against appellate costs was that none such could have been contemplated by the injunction bond, inasmuch as they were provided for by the law of appeal, or rather would have been if security on the appeal had not been waived by the appellee.
The act of the 27th of February 1828, Supp. Rev. Code, p. 126, § 3, made no change in the law of injunction damages; but provides, as the condition of reviving a dissolved injunction by appeal, additional security to the creditor, and indemnity to the surety in the original injunction bond, by requiring a new bond, combining the nature both of an injunction and of an appeal bond. The mischief to be remedied was that by the protraction of the injunction, occasioned by the appeal from the dissolution order, the creditor was subjected to the danger of loss from a supervening insolvency of the debtor, and of the surety in the original injunction bond; and that the surety himself from the same cause was subjected to the like danger from such insolvency of his principal.
The statute accordingly enacts, in the first place, “ that no appeal from any order dissolving an injunction shall have the effect of reviving the same, until the plaintiff shall have entered into bond with security in a penalty equal to the penalty of the injunction bond ; with condition to prosecute the appeal with effect, or to *202 pay all such debt, interest, damages and costs, for which the security in the injunction bond was bound, and also all costs in the Court of Appeals.” The creditor was thus further secured in his judgment at law, and in the injunction damages thereupon, both prospectively and retrospectively, and also secured in his costs in the Court of Appeals, by a substitution for the appeal bond prescribed by the general law of appeals.
In the next place the statute enacts that “ in all such cases, the security in the appeal bond shall be answerable over to the security in the injunction bond, for the amount due at the time of the appeal, in case he shall have paid and satisfied the same; for which purpose a suit may be instituted on the appeal bond, by the security in the injunction bond, at his own costs and charges, to recover the amount so paid.” Now, it can hardly be supposed that the legislature intended the indemnity to the surety in the original bond to fall short of his responsibility thereby incurred; but the draftsman of this clause seems, in consulting brevity, to have fallen into some obscurity, by using the comprehensive words, “for the amount due at the time of the appeal,” instead of repeating the particulars in the first clause, to wit, “all such debt, interest, damages arid costs for which the security in the injunction bond was bound.” It could not have been the design to exclude both running interest and damages beyond the dissolution order, which would be the effect of a strict adherence to the letter; while the general words, “amount due at the time of the appeal,” taken with the context and the spirit of the enactment, import the amount due and to become due.
At most, this act of 1828 can furnish, upon this question of damages, nothing more than a legislative impression of the pre-existing law, (which if wrong could be of no avail,) and it would be most strange if, while the legislature were providing for the consequences of a revival of the injunction by an appeal from the dissolution *203 order, they should have contemplated the result of neither injunction nor appellate damages being allowed beyond the ineffectual order of dissolution, though a direct appeal from the judgment enjoined would have given damages during the time of its pendency. That the damages contemplated by the act, whether stopping at or extending beyond the dissolution order, were injunction and not appellate damages, is plain from the relation thereof to the origin of the injunction, and of the liability therefor of the original surety. This is placed beyond the reach of doubt by a reference to the provisions of the act of 1831, establishing the Circuit Superior Courts, in relation both to appeals and injunctions.
By the first proviso of the 32d section of that act, Supp. Rev. Code, p. 149, it is enacted, “ that henceforth upon the afiirmance of any decree or judgment whatsoever of any Inferior Court by any Appellate Court, no damages shall be awarded to the party prevailing beyond legal interest on the debt or damages, or profits of property adjudged, and the costs.” What has been already said will serve to shew that this proviso applies only to appeals from decrees or judgments by which a direct recovery of money is had, and not to an appeal from a decree or order dissolving an injunction recovered. And by the 43d section of the same act, the act of January 1804, above quoted, giving 10 per cent, damages, from the awarding an injunction to the dissolution thereof, is re-enacted toiidem verbis. Supp. Rev. Code, p. 152. If there were any thing, therefore, in the act of 1828, whether of enactment or interpretation, inconsistent with these provisions, it would be thereby repealed.
A further distinction between appellate and injunction damages is to be found in the mode of their recovery. The former are awarded in the Appellate Court by the judgment or decree of affirmance : the latter by the law *204 itself, which directs the clerk of the Chancery Court to certify to the clerk of the Court of Law the order of dissolution and the time of granting and dissolving the injunction, and that the latter shall embrace them in the executi°n 011 the judgment, or by direction of his Court, in the judgment on the forthcoming bond. The proper practice is for the clerk of the Appellate Court to certify the affirmance of an order of dissolution to the Chancery Court below, where it is entered; which enables the clerk of the latter Court to make the proper certificafe to the clerk of the Court of Law. And it would be gross misconduct in the clerk of the Chancery Court to certify the original dissolution order, without also certifying therewith the appeal therefrom, and the affirmance, with its date, in the Appellate Court, in order to make known the true period of actual dissolution. Such has been the uniform practice, so far as my information extends; as also for the clerk of the Court of Law to include in the execution on the judgment, or in the forthcoming bond and the execution thereupon, injunction damages at the rate of 10 per centum per annum from the time the injunction was awarded in the Court of Chancery, until the final dissolution thereof by the decree of affirmance in the Appellate Court. I recollect no instance to the contrary, nor any objection made to this practical interpretation of the statute, until the occurrence of the present case.
The damages, whether injunction or appellate, allowed by law for retarding execution, are in the nature of interest, and the substantial effect of both prior to the act of 1831, was to give four per cent, above legal interest upon a judgment carrying running interest, and to give legal interest and four per cent, more upon a judgment carrying no running interest. That act, by its 32d section above quoted, abolishes appellate damages beyond legal interest, but by its 61st section continues injunction damages at 10 per cent. But the effect of the *205 principle asserted by the defendant in error would be in injunction cases, to repeal so much of the statute as allows any equivalent for running interest upon judgments which carry none.
It is highly probable that the abolition of arbitrary appeals, in most cases, by the act of 1831, led to the reduction of appellate damages made by that act. But it could not have suggested any reduction of injunction damages, for arbitrary appeals from interlocutory orders or decrees dissolving injunctions have never been allowed by law. 2 Rob. Pract. 421, 2. Cases of hardship are, moreover, provided for by the injunction law, which gives to the Equity Court a discretionary power to remit the whole, or any part of the damages, where the injunction was filed to obtain a discovery, or any part of the judgment remains enjoined.
My opinion is, that the Circuit Court erred in sustaining the motion of the defendant in error to quash the execution, for embracing damages at 10 per cent, beyond the order of dissolution, until its affirmance in the Court of Appeals.
Allen, J. The 61st section of the act 1 Rev. Code, p. 209, re-enacted by the 43d section of the act in the Supp. Rev. Code, p. 152, provides, that when an injunction to stay proceedings on any judgment, shall be dissolved wholly or in part, damages at the rate of ten per centum per annum from the time the injunction was awarded, until the dissolution, shall be paid; and the clerk of the Court where the injunction was depending, is directed to certify to the clerk of the Court where the judgment was obtained, the order of dissolution, as also the time of granting and dissolving such injunction ; and the clerk shall issue the execution according to the provisions of the act.
By the 59th section of the act 1 Rev. Code, p. 208, it is provided, that the Court of Appeals, in all cases where *206 any decree rendered for any sum of money shall, on appsal therefrom, be affirmed, shall award damages at the rate of 10 per centum to the appellee.
The act of 1831, Supp. Rev. Code, p. 149, <§> 32, modifies the provision in relation to damages upon appeals, by directing that no damages shall be awarded to the party prevailing beyond legal interest.
By another act passed February 27th, 1828, Supp. Rev. Code, p. 126, it is enacted, that no appeal from an order dissolving an injunction, shall revive the same, until the plaintiff shall have entered into bond with security, in a penalty equal to the penalty of the injunction bond, with condition to prosecute the appeal with effect, or to pay all such debt, interest, damages and costs, for which the security in the injunction bond was bound; and also ail costs in the Court of Appeals. And in such cases, the security in the appeal bond shall be answerable over to the security in the injunction bond, for the amount due at the time of the appeal, in case he shall have paid and satisfied the same; for which purpose, the security in the injunction bond is permitted to institute suit on the bond in the name of the creditor, to recover the amount so paid.
In the case under consideration, an injunction to a judgment had been dissolved, and the plaintiff in the injunction desiring to appeal, the effect of the order was suspended for sixty days, within which he obtained and perfected the appeal. In the Court of Appeals, the order dissolving the injunction was affirmed ; and the clerk of the Court where the judgment was obtained, having included damages in the execution from the time the injunction was awarded, to the period when the order of dissolution was affirmed, the execution was quashed ; and the question is presented, whether the damages should be calculated up to the period of affirmance in the Court of Appeals, or the time of dissolving the injunction ; and its resolution depends upon the con *207 struction of the statutes before referred to. Before the act of 1831, damages on appeals were awarded by the Court in all cases where a decree for a sum of money was affirmed by the Appellate Court. But when the right to an arbitrary appeal was abolished, these damages were reduced to six per cent., the legal interest. This law did not provide for the case of injunction. The order dissolving, is no decree for money; the decree merely lets loose the execution at law. There is no judgment, either in the Chancery or Appellate Court, awarding damages upon the dissolution. The law allows them on the amount enjoined, from the time of granting, to the dissolution of the injunction; and the clerk inserts them in the execution as a portion of the sum to which the plaintiff becomes entitled under his judgment; as much so as to the costs incurred after the judgment, for issuing execution. But where damages were awarded by the Appellate Court upon an affirmance of a decree for money, the award of damages was the act of the Court; and the clerk could not insert the damages in the execution unless they had been so awarded and certified. In Eppes v. Thurman, 4 Rand. 384, it was decided, that the decree dissolving the injunction did not bind the party to pay the judgment; it merely let loose the execution at law: That there was nothing recovered by the decree but the costs; and, therefore, the appellant in such case, could not be required to give security for the payment of the judgment enjoined.
The claim to damages accruing between the time of the dissolution of the injunction and the affirmance in the Appellate Court, cannot, according to this decision, be sustained under the provisions of the law regulating appeals. If sustained at all, it must be under the act giving damages upon the dissolution of an injunction ; that gives them from the time the injunction was awarded until the dissolution. In Wood v. Dwight, 7 John. *208 Ch. R. 295, it was decided, that, after an order dissolv.ing an injunction was duly entered, no subsequent appeal could, of itself, affect the validity of the order, or revive the process, and give it force and effect: an apPeal on^ stays future proceedings in the Court. I can perceive nothing in the terms of our act which can justify a different construction. The Appellate Court enters no new order dissolving the injunction. By a general affirmance, it holds that the order of dissolution was rightfully entered. Where a judgment or decree is affirmed, we look, not to the date of affirmance, but to the date of the judgment in the Court below, for the purpose of ascertaining its effect. Thus in M’Clung v. Beirne, 10 Leigh 394, this Court held, that the real estate, aliened by the debtor between the date of the original judgment and the date of the judgment of affirmance, is subject to the lien of the judgment. And in the case of Epes v. Dudley, 4 Leigh 147, Judge Carr remarks, that where the judgment or decree is wholly affirmed, it is still the judgment or decree of the Court below, unaltered and untouched. It is true, that in Turner v. Scott, 5 Rand. 332, the Court says, a dissolved injunction was revived by an appeal, and it is improper in the appellee to take out execution so long as the appeal is depending. The latter proposition was the point arising and decided by the case; and about that, there could seem to be no question. The appeal, of itself, prohibited the party from taking out execution, proprio vigore; and it was unnecessary to refer to the order awarding the injunction as being revived, to produce this effect. Otherwise the appeal must be taken to have utterly abrogated the order of dissolution, and the Appellate Court, instead of merely affirming the order, should proceed to enter an order of dissolution itself as an original order. In the case of Epes v. Dudley, supra, Judge Tucker, referring to the case of Turner v. Scott, says, the appeal revived the injunction; *209 and in another part of his opinion, that the decree of affirmance had ratified the previous order of dissolution, and abrogated the revival by appeal. It was not necessary in either of the cases to decide, nor in fact did the Court decide, that the injunction itself was revived. The only question in the first case was, whether the party could take out execution pending the appeal; and in the last, whether, after an order of dissolution is affirmed, the party could take out execution.before the decree of affirmance was entered up in the Court of Chancery ; and it was decided that he could : thereby, in effect, determining, that it was the order of dissolution which was to be regarded, and the appeal merely suspended its effect. And such was the construction given to the proceeding by Judge Carr in the same case. His language is similar to that of the Chancellor, in Wood v. Dwight, 7 John. Ch. R. 295. “ The appeal,” he says, “ suspended the right to take out execution ; the affirmance removed the suspension.” Even, according to the language of Judge Tucker, if the appeal revived the injunction, the affirmance abrogated the revival. “ The instant,” he says, “ the appeal was at an end, its effect to revive was at an end also, and the injunction of course was dissolved.” If dissolved, it stood dissolved by force of the original order, for none other was entered; and the rights of the parties were the same as if no revival had taken place.
The case of Woodson v. Johns, 3 Munf. 230, was a suit on a bond dated in 1791, before the passage of the act allowing damages upon the dissolution of an injunction, and is consequently no authority upon the question of damages. But by the law, as it then stood, the party obtaining the injunction, was to give bond with condition, amongst other things, to pay all such costs as should be awarded against him in case the injunction should be dissolved. Revision of 1792, page 95, § 56. *210 The breach set out alleged that the injunction was dissolved and costs were awarded. It appeared that the injunction had been dissolved and bill dismissed, and the decree had been affirmed. The Court of Appeals decided, that the security in an injunction bond is not liable for the costs and damages which may accrue on an appeal to a Superior Court. Now, as the condition required him to pay all costs which should be awarded against him in case the injunction should be dissolved, if the judgment or decree of affirmance is held to be the decree dissolving the injunction, then the costs awarded against him, upon such decree of affirmance, would be the costs awarded against him on the dissolution of the injunction. But the Court held otherwise : thereby referring the dissolution to the original order, and limiting the liability of the security to the costs then awarded.
By the act passed since 1791, damages from the time of awarding the injunction to the dissolution, are to be paid; and the party obtaining the injunction, must give bond for paying to the plaintiff at law the money due, &c., and all such costs and damages as shall be awarded against him in case the injunction be dissolved. The case of Woodson v. Johns, decided that the security was not liable for the costs of the Appellate Court, though awarded by its judgment; and, a fortiori, it would seem, that damages could not be recovered which the Appellate Court does not award. The decision in that case, as to the costs, is in principle conclusive as to the damages allowed by subsequent laws.
This seems to have been the legislative construction of the previous acts, when, by the act of February 27, 1828, Sup. Eev. Code, p. 126, §. 3, provision was made for the indemnity of the security in the injunction bond. The intention was to give full indemnity, and is so declared. The first clause requires, that the condition of *211 the appeal bond shall be for the payment of all the debt, interest, damages and costs, for which the security in the injunction bond was bound, and the costs in the Court of Appeals; and the act then proceeds to declare, that the security in the appeal bond shall be answerable over to the security in the injunction bond, for the amount due at the time of the appeal, in case he shall have paid the same ; and authorizes him to put the bond in suit in the name of the creditor.
The act proceeds upon the impression, that the security in the injunction bond was only bound for the amount due at the time of the appeal; for, having required the condition to be for the payment of all for which the security in the injunction bond was bound, it is unreasonable to suppose that it could have been intended by the next clause to reduce his recovery to a less sum.
This understanding of the Legislature may also account for the fact, that when, by the act of 1831, having taken away the right of arbitrary appeals, it was deemed proper to relieve the appellant from damages beyond legal interest, no change was made in the law respecting damages on the dissolution of the injunction.
It was esteemed to be harsh and oppressive to subject the appellant to damages after he had obtained the sanction of an Appellate Court, or a Judge thereof in vacation, that the appeal was not without probable cause. The same policy would probably have been applied to damages on appeals from orders dissolving injunctions, if the Legislature had not supposed that no such damages were recoverable by the law as it then stood. Upon the whole, though possibly there may have been a different practice in many of the clerks’ offices, I am of opinion that the time of dissolution is the time when the original order was made, and not when it was affirmed in the Court of Appeals. I am therefore for af *212 firming the judgment quashing the execution, which in-eluded damages up to the time of affirmance.
Cabell, P. and Daniel, J. concurred in the opinion
Judgment affirmed.